IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:24-cr-0028 |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| WILLIAM JACK BERG, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 2

SENTENCING CALCULATION & OBJECTIONS ...................................................... 3

   A.  Guidelines Calculation & Disputes ................................................................ 3

   B.  Berg attempted to obstruct or impede the administration of justice when he ripped up and placed in the garbage approximately 70 pages of documents specific to his financial dealings with 10 of his victim investors.  The Court should apply the two-level enhancement for obstruction of justice. ............................................................................................... 4

   C.  Berg knew or should have known that at least one victim of the offense was a "vulnerable victim."  The Court should apply the two-level enhancement for vulnerable victim. ................................................................ 8

RESTITUTION ................................................................................................................. 11

THE § 3553(a) FACTORS SUPPORT A SIGNIFICANT SENTENCE ..................... 11

CONCLUSION ................................................................................................................... 12

1

## INTRODUCTION

Defendant William Jack Berg purported to be a financial advisor to retirees and persons on the cusp of retirement. Instead, by 2016, and continuing through 2023, Berg was defrauding them. Berg convinced them to invest in companies with supposed good returns—W. Holdings of Iowa and Excel Performance Management. Unknown to the victim investors, these purported companies were mere shell companies that Berg created and controlled. Berg convinced the victim investors to liquidate legitimate existing investments and provide the proceeds to Berg for investment in W. Holdings and Excel. But Berg did not invest their monies. Instead, Berg spent the victim investors' monies for Berg's own personal expenses (including cars, jewelry, travel, and food) and to make lulling payments to other investors. Berg victimized at least 17 people and took over $2 million from victim investors during his approximate 8-year scheme. He owes his victims over $1.6 million in restitution.

Berg's lengthy scheme was calculated, sophisticated, and targeted. He created fake investment agreements, provided fictitious investment statements, created a fictious website, and undertook numerous other steps to dupe victim investors and avoid detection. And he carefully selected his targets. Berg established and cultivated relationships with most of his victims before defrauding them. As a result, he knew who he could successfully exploit. His victims included widowers and the elderly. Most of his clients had little to no investment experience or knowledge. But instead of honoring his victims' trust and protecting the vulnerable, Berg mercilessly preyed on them.

When criminal investigators closed in on Berg, he did not own his actions. Instead, Berg told the FBI and Iowa Insurance Division that he didn't know why multiple of the investor victims would be unhappy with him.  And, when law enforcement tried to arrest Berg on the federal indictment, Berg actively eluded. Berg asked others to aid his flight.  He fled the state.  Berg was apprehended, weeks later in Kansas.

Berg's selfish fraud has devasted numerous victims.  He spent all their monies leaving very little of value to be returned to them other than a few pieces of jewelry. These mere pennies on the dollar will do little to dull the impact Berg's fraud.  The impact on the victims—both financially and emotionally—is profound.   This Court should sentence Berg to 144 months in prison and order Berg to pay restitution.

## SENTENCING CALCULATION & OBJECTIONS

### A. Guidelines Calculation & Disputes

The probation office has calculated the guidelines as:

| | |
|---|---:|
| Base Offense Level (USSG §2B1.1(a)(1)) | 7 |
| Loss Greater than $1.5 million (§2B1.1(b)(1)(I)) | +16 |
| Five or More Victims Suffered Substantial Financial Hardship (§2B1.1(b)(2)(B)) | +4 |
| Sophisticated Means (§2B1.1(b)(10)(C)) | +2 |
| Abuse of a Position of Public/Private Trust, or Use of a Special Skill (§3B1.3) | +2 |
| <u>Acceptance of Responsibility (§3E1.1)</u> | <u>-3</u> |
| Total Offense Level | 28 |
| Criminal History Category | I |
| Advisory Guidelines Range | 78 to 97 months |

The United States disagrees with the probation office's calculation because it fails to apply a two-level enhancement for vulnerable victim and a two-level enhancement

3

for obstruction of justice. The government provided timely objections (R. Doc. 38) and further outlined its positions in a subsequent objection meeting.

The United States asks the court to calculate the guidelines as:

| | |
|---|---:|
| Base Offense Level (USSG §2B1.1(a)(1)) | 7 |
| Loss Greater than $1.5 million (§2B1.1(b)(1)(I)) | +16 |
| Five or More Victims Suffered Substantial Financial Hardship (§2B1.1(b)(2)(B)) | +4 |
| Sophisticated Means (§2B1.1(b)(10)(C)) | +2 |
| Vulnerable Victim (§3A1.1(b)(1)) | +2 |
| Abuse of a Position of Public/Private Trust, or Use of a Special Skill (§3B1.3) | +2 |
| Obstruction of Justice (§3C1.1) | +2 |
| Acceptance of Responsibility (§3E1.1) | -3 |
| Total Offense Level | 32 |
| Criminal History Category | I |
| Advisory Guidelines Range | 121 to 151 months |

There are no factual disputes for the Court to decide. The parties agree with the restitution amounts listed in the PSR. The only significant issues for the Court are the guidelines issues and the appropriate sentence.

**B. Berg attempted to obstruct or impede the administration of justice when he ripped up and placed in the garbage approximately 70 pages of documents specific to his financial dealings with 10 of his victim investors. The Court should apply the two-level enhancement for obstruction of justice.**

A two-level obstruction enhancement applies "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's

offense of conviction and any relevant conduct; or (B) a closely related offense." USSG §3C1.1. The commentary provides a non-exhaustive list of examples to which this enhancement applies, including:

> "<u>destroying</u> or concealing . . . <u>evidence that is material</u> to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), <u>or attempting to do so</u>; however, if such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." USSG §3C1.1, comment. (n.4(D)) (emphasis added).

"Material" is defined in the commentary. USSG §3C1.1, comment. (n.6). It means "evidence . . . or information that, if believed, would tend to influence or affect the issue under determination." In other words, information is "material" if the information is relevant[1] to an official investigation.

Simply put, Berg attempted to destroy and conceal evidence that is highly relevant to an official investigation. And his conduct was not contemporaneous with arrest. Thus, the enhancement applies.

Berg knew by July 2023, that an official investigation had commenced because the FBI and Iowa Insurance Division confronted him about his dealings with several victims. (PSR ¶138a.) Berg was alerted on Thursday, March 21, 2024, that he was wanted on a federal fraud indictment and needed to turn himself in to the FBI immediately. (PSR ¶138b-c.) Berg failed to do so. The authorities were unable to

---

[1] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." F.R.E. 401 (Test for Relevant Evidence).

5

find Berg. On Monday, March 25, the FBI went to an Adel residence hoping to find Berg. Berg was not there. (PSR ¶138d.) But the FBI found a bag of paper trash in the trash bin at the end of Berg's driveway. (*Id.*) The trash consisted of numerous documents that Berg had (at an unknown time) thoroughly ripped up by hand and placed in the garbage. (*Id.*) Like a puzzle, investigators successfully re-assembled many of the documents. (*Id.*) The results are 74 pages of documents—almost all of which are specific to Berg's financial dealings, transactions, and agreements with victims. (*Id.*, Government Exhibit[2] (GX) 1 (copies of the reassembled documents)). The documents relate to 10 of Berg's victims. The documents include fictious tax documents and fictitious account statements that Berg created to lull victims, among other things relevant to the fraud.

These records are exceeding relevant to the investigation. At minimum, they further tied Berg to financial transactions with the investor victims. That Berg had already been charged is of no consequence. Simply because Berg had been charged before the destroyed documents were found does not mean the documents destroyed are not material to an official investigation. Material does not mean "critical to charge" or "necessary for the prosecution." See, e.g., *United States v. Martin*, 369 F.3d 1046 (8th Cir. 2004)(material does not mean the conduct needed to prejudice the government and the government need only prove it was impeded by the destruction if the destruction occurred contemporaneously with arrest.) The destruction of the

---

[2] Government sentencing exhibits 1 through 11 are filed under seal in accordance with this Court's order. R. Doc. 34. The government will move to admit these exhibits at sentencing and request that they remain sealed.

6

records need not materially hinder the investigation *unless* the destruction occurred contemporaneously with arrest. Here, the destruction plainly did not occur contemporaneously with arrest. The destruction occurred some time prior to March 25 when the FBI was no where near Berg's Adel residence. Berg was arrested two weeks later, hundreds of miles away. Commentary note 4(D) itself strongly suggests "contemporaneously with arrest" means in the same immediate moments as arrest— "e.g. attempting to swallow or throw away a controlled substance" such as when a defendant might try to flush drugs as police are breaching the residence they are in. And this Circuit has further clarified that the "contemporaneously with arrest" exception is limited "to include only conduct admitting a spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent and to be further limited to only that evidence which is within the subject' control at or near the scene of the arrest." *United States v. Sykes*, 4 F.3d 697, 699 (8th Cir. 1993)(cleaned up); *United States v. Unger*, 484 Fed.Appx. 78, 83 (8th Cir. 2012)(cleaned up). The Adel residence was not the scene of the arrest. And the evidence indicates that Berg tore up the records as part of his attempt to cover his tracks as he stayed ahead of the FBI and fled the state. His destructive conduct was far from a "spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent."

The Court should apply this two-level enhancement because Berg attempted to destroy and conceal evidence that was material to an official investigation. And that destruction was not contemporaneous with arrest.

### C. **Berg knew or should have known that at least one victim of the offense was a "vulnerable victim."  The Court should apply the two-level enhancement for vulnerable victim.**

"If the defendant knew or should have known that a victim of the offense was a vulnerable victim" a two-level enhancement applies. USSG §3A1.1(b)(1).  A "vulnerable victim" means "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG §3A1.1, comment. (n.2).

The Court need only determine that a single victim is a vulnerable victim for this enhancement to apply.  To apply this enhancement "requires a fact-based explanation as to why advanced age or some other characteristic made one or more victims 'unusually vulnerable' to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability." *United States v. Fiorito*, 640 F.3d 388, 350-51 (8th Cir. 2011).  Because the district court is best suited to make the factual determinations in this regard, it is reviewed for clear error. *United States v. Anderson*, 440 F.3d 1013, 1017-18 (8th Cir. 2006).

The Court cannot make a "blanket assumption that an advanced age is sufficient to render a victim vulnerable." *Anderson* at 1018.  However, the Court should consider age and the countless other factors that contribute (alone or in combination) to whether a particular victim is "otherwise particularly susceptible" to the crime.  This is a totality of the circumstances approach.  See, e.g., *United States*

8

*v. Beyer*, 878 F.3d 610 (8th Cir. 2017)(a combination of factors together warranted application of the enhancement and citing several examples from other cases).  In *Anderson*, the Court affirmed the enhancement in an investment fraud scheme case based on a victim who was 84, had a limited education, had no work experience indicating an exposure to or an understanding of investments, and had no investment experience outside of her connection with the defendant.  *Anderson* at 1017-18.

Several of Berg's victims had a lower-than-average ability to protect themselves against Berg's fraud and, as a result, were "particularly susceptible to the criminal conduct."  Many of his victims were elderly.  Almost all of them lacked any work experience related to investments.  Most lacked investment experience outside of their connection with Berg.  Several were recent widowers.  Most were solely reliant on Berg for investment advice.  Below are several examples of Berg's vulnerable victims:

- A.Y. (and his late wife, K.Y.) were vulnerable.  See GX 2, 2A, PSR ¶¶ 90-95.  They were in their 80s when Berg duped them.  After K.Y. died in 2020, Berg stole additional money from A.Y. shortly thereafter.  A.Y. was a life-long farmer.  K.Y. a school teacher.
- J.B. was vulnerable.  See GX 7, PSR ¶¶ 96-102.  J.B. is over 80.  His wife died about four years ago; she handled the finances until her passing.  See GX 7 at p. 4.  But Berg convinced J.B. about three years ago to take out J.B.'s annuity money and provide it to Berg for investment.  PSR ¶¶ 98-99.  J.B. has an 11th

9

grade education, worked as a mechanic, and had "limited" knowledge of investing. GX 7 at p.4.

- D.R. was vulnerable. See GX 3, 3A, PSR ¶¶ 28-36. D.R. is in his 60s. His formal education was limited to high school. He worked for nearly four decades in highway maintenance. Some of the money D.R. provided to Berg was life insurance money D.R. received following his wife's passing. GX 3A at page 5.

- D.H. and J.H. were both vulnerable. See GX 4, 4A, PSR ¶¶ 72-81, 141f. Both are in their 70s and neither has any formal education beyond high school. GX 4. Both consider themselves uneducated concerning financial matters and they relied solely on Berg for financial advice. GX 4. Neither had knowledge of investing beyond what Berg told them. GX 4. D.H. worked as a school custodian; J.H. as a school receptionist. GX 4, PSR ¶ 73.

- R.K. was vulnerable. See GX 9, PSR ¶¶ 82-89, 141(h). R.K., a truck driver, was in his 60s when defrauded by Berg. He has no formal education beyond high school. He has no knowledge involving financial matters and relied solely on Berg for financial advice. GX 9, 141(h).

- J.P. and P.P. were both vulnerable. See GX 10, PSR ¶¶ 16-27, 141(g). They depended solely on Berg for financial advice. J.P., now in his 80s, has no post-high school education and worked his entire career at a tire plant. P.P., now in her mid-70s, has only minimal education beyond high school and no occupational experience specific to investing or finance. GX 10.

In sum, many (if not most) of the 17 victims were unusually vulnerable due to age and/or otherwise particularly susceptible to the Berg's fraud. These unusual vulnerabilities—coupled with the trust Berg cultivated with the victims—are precisely why Berg chose these victims to defraud.[3] And it is indisputable that Berg knew (or should have known) of these vulnerabilities, as Berg had been involved in the victims' financial affairs for some time and cultivated an established relationship with his victims.

## RESTITUTION

The provisions of the Mandatory Victim Restitution Act apply to Berg's offense. Some victims have indicated a desire to speak to the Court at sentencing and others may have a third-party read a statement on their behalf. All victim impact statements received to date have been provided to the Probation Office and defense and are within the government's sealed exhibits.

The government asks that the Court order restitution totaling $1,643,150.27 among the various victims as set out in the PSR. See PSR ¶ 141.

## THE § 3553(a) FACTORS SUPPORT A SIGNIFICANT SENTENCE

The offense is exceptionally serious. Berg's fraud spanned eight years during which he victimized at least 17 people in the charged scheme. He took over $2 million and still owes over $1.6 million. To keep his fraud afloat, Berg had to lie to his victims nearly continuously—for years. He lied to people he had groomed to trust him. And

---

[3] To be sure, there is no requirement that there be a nexus between the victims' vulnerabilities and the success of the crime or that the defendant targeted victims because of their vulnerabilities. See *United States v. Beyer*, 878 F.3d at 614. Nonetheless, Berg carefully targeted his victims and their vulnerabilities certainly contributed to the success of Berg's fraud.

11

he conned people who were vulnerable. Berg's lengthy criminal scheme was calculated, sophisticated, and targeted.

Berg conned people who had worked lifetimes (including teachers, custodians, farmers, and laborers) hoping that they might have some peace of mind and stability during their golden years. Berg spent their nest eggs on lavish purchases and otherwise frittered the money away senselessly. Berg has robbed these good people of the retirements they earned. Some have had their nest eggs nearly completely stolen by Berg. But Berg robbed them of far more than just money. Berg robbed them of their ability to trust others. Berg has caused his victims anxiety, shame, fear, and anger that may never end. And Berg has caused strife in marriages and relationships. These impacts are profound. A long-running, expansive fraud with devastating impact should be met with a significant consequence.

## CONCLUSION

A significant sentence is necessary to achieve the goals of the sentencing statute. The United States recommends 144 months in prison. A 144-month term of imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of Berg's crime, to provide Berg just punishment, to protect the public from further crimes of Berg, and to afford adequate deterrence to criminal conduct.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/Adam J. Kerndt*

Adam J. Kerndt
Assistant United States Attorney
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email:  Adam.Kerndt@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail  _____ Fax  _____Hand Delivery

__X__ECF/Electronic filing  ____Other means

UNITED STATES ATTORNEY
By:  */s/Adam Kerndt, AUSA*